**Affirmed and Memorandum Opinion filed March 16, 2021.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-19-00720-CR

---

**MANUEL SILVA III, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 10th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 18CR1872**

---

## M E M O R A N D U M   O P I N I O N

Appellant Manuel Silva III pleaded guilty to the offense of assault on a family or household member and the jury assessed punishment at life imprisonment. In a single issue, Appellant contends he received ineffective assistance of counsel. For the reasons below, we affirm.

### BACKGROUND

Appellant was arrested after a violent altercation with his ex-girlfriend,

Complainant, at her home in Galveston, Texas. Appellant pleaded guilty to the offense of assault on a family or household member (Tex. Penal Code Ann. § 22.01(b)(2)) and pleaded true to two enhancements. Appellant elected to have a jury assess punishment.

During Appellant's three-day punishment hearing, eight witnesses testified and approximately 100 exhibits were admitted into evidence. We briefly summarize this evidence as necessary for our analyses below.

The State offered into evidence 28 exhibits showing Appellant's criminal history, which included convictions for the following offenses: possession of marijuana (three counts); possession of cocaine; forgery (three counts); credit card abuse (four counts); criminal mischief; driving while license suspended; accident involving injury or death; theft (two counts); burglary of a habitation; burglary of a motor vehicle; unlawfully carrying a weapon; assault on a public servant; and assault causing bodily injury, family violence (two counts).

Complainant testified at the punishment hearing regarding her relationship with Appellant and the incident underlying his conviction. Complainant said she and Appellant became romantically involved in August 2017, but their relationship ended after Appellant became verbally abusive and violent. Complainant described two abusive incidents: one where Appellant threw a phone at her and punched her in the chest and a second where Appellant hit her several times in the chest, kicked her in the back and ribs, and punched her.

The incident underlying the conviction at issue occurred on June 10, 2018. Early that morning, Complainant returned to her home after attending a graduation party. Upon entering the house, Complainant could tell that things were out of place; she suspected that "somebody ha[d] been in [her] house." Complainant walked into her bedroom and noticed that an expensive ring was missing. Shortly

2

thereafter, Appellant kicked in Complainant's back door, grabbed her by the hair, and threw her into a dresser. Complainant recalled that Appellant started punching her in her face before standing up and "stomping [her] on [the] right side of [her] face." Complainant said Appellant then "grabbed [her] from [the] back of [her] hair and started hitting [her] head into the floor and punching [her] on the back of [her] head."

Appellant eventually left Complainant's house and Complainant drove to her sister's home. Complainant and her sisters went to the police station to report the incident. Photographs of Complainant's injuries were taken at the police station and at the hospital. Many of these photographs were admitted into evidence and show significant injuries, abrasions, and swelling on Complainant's face and neck.

Also admitted into evidence was a Facebook message Appellant sent Complainant two days after the incident. In the message, Appellant told Complainant: "If I go to prison for you bad shit is gonna happen . . . . And it's out of my control just so you know I warned you."

Complainant also met with Appellant's daughter, Mandi Stubbs, several days after the incident. Complainant said she had a "great" relationship with Stubbs. When they met, Stubbs returned to Complainant the ring that had been taken from Complainant's home. But before the ring was returned, Complainant said Stubbs directed her to write a letter saying the following:

> I, [Complainant], found the 3/4 karat ring that I thought was stolen by [Appellant] on June 10, 2018. My assumption was incorrect and [Appellant] did not steal the ring.

Complainant signed the letter. The letter was admitted into evidence at the punishment hearing.

According to Complainant, she secured a protective order against Appellant

that prohibited him from directly or indirectly contacting her for five years. Complainant testified that members of Appellant's family had contacted her "[s]pecifically in regards to this case" which "goes against the terms of [the] Protective Order."

The State also presented testimony from Complainant's sister and two Galveston police officers who had responded to Complainant's house after the incident with Appellant. Counsel for Appellant presented testimony from Appellant's son, daughter (Mandi Stubbs), and ex-wife (Anne Roe).

After deliberations, the jury assessed a punishment of life imprisonment. Appellant timely appealed.

## ANALYSIS

In a single issue, Appellant asserts he received ineffective assistance of counsel during the punishment hearing. Specifically, Appellant challenges his trial counsel's (1) decision to call Stubbs and Roe to testify, and (2) failure to call a witness who would have provided testimony favorable to Appellant. Appellant argues that, but for these alleged errors, the result of the punishment hearing would have been different.

## I.    Standard of Review and Governing Law

To prevail on a claim of ineffective assistance, an appellant must show (1) counsel's performance was deficient and fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Perez v. State*, 310 S.W.3d 890, 892-93 (Tex. Crim. App. 2010). We apply this two-prong test for ineffective assistance in both the guilt/innocence and punishment phases of trial. *Hernandez v. State*, 988

4

S.W.2d 770, 772-74 (Tex. Crim. App. 1999) (en banc); *West v. State*, 474 S.W.3d 785, 794 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

An appellant bears the burden of satisfying both prongs of the *Strickland* test by a preponderance of the evidence. *Perez*, 310 S.W.3d at 893. We consider the totality of the circumstances to determine whether this showing was made. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

Our review of counsel's representation is highly deferential and we indulge a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Donald v. State*, 543 S.W.3d 466, 477 (Tex. App.—Houston [14th Dist.] 2018, no pet.). To overcome the presumption of reasonable professional assistance, any allegation of ineffectiveness must be firmly founded in the record. *Salinas*, 163 S.W.3d at 740. When, as here, the record is silent as to trial counsel's strategies, we will not conclude that counsel's performance was deficient "unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

## II.      Counsel's Decision to Call Stubbs and Roe

The decision to call a witness is generally a matter of trial strategy that involves weighing the risks and benefits of the witness's testimony. *See Prine v. State*, 537 S.W.3d 113, 118 (Tex. Crim. App. 2017); *State v. Thomas*, 768 S.W.2d 335, 337 (Tex. App.—Houston [14th Dist.] 1989, no pet.). "Evaluating such risks and benefits is exactly the type of strategic decision that ordinarily requires courts to evaluate an attorney's explanations before concluding counsel was ineffective." *Prine*, 537 S.W.3d at 118 (internal quotation omitted).

Appellant raises specific arguments challenging counsel's decision to call Stubbs and Roe, which we analyze below.

## A.     Stubbs

Appellant argues counsel's decision to call Stubbs fell below an objective standard of reasonableness because (1) Stubbs "testified concerning how she helped [Appellant] violate the protective order", and (2) counsel "did not seem prepared concerning the positive facts [Stubbs] did provide."

Appellant's first argument focuses on Stubbs' contact with Complainant after the June 10, 2018 incident.  Stubbs testified that she met with Complainant several days after the incident to return Complainant's ring.  Stubbs said she asked Complainant if she "would be willing" to write a letter exonerating Appellant with respect to the theft of the ring.  According to Stubbs, Complainant "agreed". Stubbs denied forcing Complainant to write the letter or dictating the letter's contents.  Stubbs also acknowledged that she reached out to Complainant several times with respect to Appellant's underlying charges and asked Complainant to "drop charges" or "sign a non-prosecution affidavit".  Stubbs testified that she knew Complainant had secured a protective order against Appellant, but said that she had not seen the protective order nor did she know all of its terms.

Appellant's second argument focuses on counsel's questions to Stubbs regarding a "Gang Renunciation" ceremony she attended while Appellant was incarcerated.  Appellant argues counsel was not "particularly prepared" for this testimony and did not ask specific questions about the program.

Considered in conjunction with the remainder of Stubbs' testimony, Appellant's arguments do not show that the decision to call Stubbs was so outrageous that it was beyond the bounds of competency.  *See Goodspeed*, 187

S.W.3d at 392. Although Stubbs' testimony regarding her interactions with Complainant after the incident suggest she may have assisted Appellant in violating the protective order, other portions of her testimony were helpful to Appellant. Stubbs' testimony regarding the ring exchange also countered Complainant's testimony that Stubbs forced her to write the letter exonerating Appellant with respect to the theft of the ring. As shown above, Stubbs made multiple attempts to smooth out the situation between Appellant and Complainant. Further, a substantial amount of Stubbs' testimony was positive: she said she has a "great relationship" with Appellant and described him as a "good father". When asked if Appellant had an anger problem, Stubbs said, "[n]ot that I've seen." Stubbs said Appellant had never been abusive towards her or her siblings and she stated that she unequivocally "love[s] him". Weighing these pros and cons is a matter of trial strategy and we decline to second-guess this determination on appeal, particularly when counsel was not afforded an opportunity to explain her decision. *See Prine*, 537 S.W.3d at 118; *Thomas*, 768 S.W.2d at 337.

Turning to Appellant's second argument, counsel's questioning regarding the "Gang Renunciation" ceremony does not demonstrate a deficiency under *Strickland* under these facts. Rather, counsel asked Stubbs multiple questions regarding the ceremony, including the program's goals, the participants at the ceremony, the events, and the certificate Appellant received. Counsel also questioned Stubbs regarding her knowledge of Appellant's gang history. In response, Stubbs said she did not know Appellant was affiliated with any gangs.

Based on the record before us, counsel's decision to call Stubbs does not fall below an objective standard of reasonableness as necessary to satisfy the first prong of the *Strickland* test. *See Strickland*, 466 U.S. at 687-88; *Perez*, 310 S.W.3d at 892-93. We overrule Appellant's challenge with respect to counsel's

decision to call Stubbs as a witness.

## B.     Roe

Appellant argues counsel's decision to call Roe as a witness fell below an objective standard of reasonableness because (1) Roe "testified about her abuse from [Appellant] and that he did not provide for his children," and (2) it permitted the admission into evidence of a July 17, 2019 letter from Appellant to Roe in which he demanded money for his prison commissary account and insulted and threatened Roe.

But these arguments, considered with Roe's other testimony, do not show that counsel's decision to call Roe fell below an objective standard of reasonableness.  Roe said she and Appellant were married for 16 years and had two children.  Roe testified that Appellant was his "kids' biggest fan".  Roe said she kept in touch with Appellant after their divorce and sent him money for his prison commissary account.  When asked why she continued to help Appellant, Roe said "[h]e's the father of [her] children" and that she has "always helped" him.

Roe acknowledged that Appellant previously had assaulted her but said their issues were "just the regular issues that any normal husband and wife go through." Roe said Appellant "had no right to put his hand[s] on" her, but also said she "took responsibility for letting myself down by allowing it, letting my kids down, [and] letting him down by not ensuring he got the help that he needed."  Roe said that Appellant was raised in a "cycle of abuse" and testified that additional time in prison would not help him.  According to Roe, something different had to be done to "fix" Appellant.

As with Stubbs, counsel's decision to call Roe was a strategic choice with risks and benefits.  Some of Roe's testimony may not have been helpful to

8

Appellant but some of her other statements — particularly those discussing Appellant's family history and what he needed for an effective rehabilitation — were foreseeably intended to foster sympathy for Appellant and bolster Appellant's case for a more lenient sentence. Counsel cannot be faulted under *Strickland* for a reasonably strategic decision that failed to yield the hoped-for result. *See Prine*, 537 S.W.3d at 118; *Thomas*, 768 S.W.2d at 337.

Counsel's decision to call Roe was not so outrageous that no competent attorney would have made it and does not satisfy the first prong of the *Strickland* test. *See Strickland*, 466 U.S. at 687-88; *Perez*, 310 S.W.3d at 892-93. We overrule Appellant's challenge with respect to counsel's decision to call Roe as a witness.

### III. Counsel's Failure to Call a Witness

Finally, Appellant contends that counsel's "decision not to call Kimberly Ann Villarreal fell below an objective standard of reasonableness under professional norms because she had positive testimony which appeared untainted by negative facts." Pointing to a prior hearing regarding his application for bond reduction in the trial court, Appellant asserts that Villarreal knew Appellant was temporarily released from custody to visit his mother and that there were "no issues resulting from that release."

When the claim of ineffective assistance is based on counsel's failure to call a witness, the appellant must show that (1) such witnesses were available to testify, and (2) appellant would have benefitted from their testimony. *Ex parte White*, 160 S.W.3d 46, 52 (Tex. Crim. App. 2004); *Robinson v. State*, 514 S.W.3d 816, 824 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). Here, the record does not show that Villarreal was available to testify at Appellant's punishment hearing. The record is also silent as to counsel's reasons for failing to call Villarreal at the

punishment hearing. Therefore, Appellant's argument fails to rebut the strong presumption in favor of effectiveness of counsel. *See Salinas*, 163 S.W.3d at 740; *see also Ex parte White*, 160 S.W.3d at 52; and *Robinson*, 514 S.W.3d at 824.

Counsel's failure to call Villareal does not constitute ineffective assistance under *Strickland* and we overrule Appellant's challenge on this point. *See Strickland*, 466 U.S. at 687-88; *Perez*, 310 S.W.3d at 892-93.

Because we conclude Appellant's arguments do not satisfy the first prong of the *Strickland* test, we need not consider whether the alleged errors in counsel's representation prejudiced Appellant. *See Perez*, 310 S.W.3d at 893.

### CONCLUSION

We affirm the trial court's final judgment.

/s/    Meagan Hassan
        Justice

Panel consists of Justices Spain, Hassan, and Poissant.

Do Not Publish — Tex. R. App. 47.2(b).